UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| LONNIE J. BEAN, JR., } | |
| } | |
| Plaintiff, } | |
| } | |
| VS. } | CIVIL ACTION NO. H-07-461 |
| } | |
| UNITED STATES OF AMERICA, } | |
| } | |
| Defendant. } | |

### OPINION & ORDER

Pending before the Court in this tax case is the United States' motion for summary judgment (Doc. 16). Dr. Lonnie J. Bean Jr. ("Dr. Bean") has filed a response in opposition (Doc. 21) and a cross-motion for summary judgment (Doc. 22). The United States has filed a reply to Plaintiff's response (Doc. 23) and a response in opposition to Plaintiff's cross-motion for summary judgment (Doc. 24). Additionally, Dr. Bean has filed a response to reply to response to motion for Summary Judgment and opposition to cross motion for summary judgment (Doc. 25.) For the reasons explained below, the Court ORDERS that the United States' motion is GRANTED and that Dr. Bean's motion is DENIED.

**I.        Background & Relevant Facts**

The Court must determine whether Dr. Bean is liable for a 100% tax penalty because a corporation, General Express, failed to hand over withholding tax from its employees' paychecks. General Express failed to file its payroll tax returns (Form 941) for the quarterly periods ending September 30, 1998, through December 31, 2001, or pay the amounts due in those quarters, amounting to $ 1,022,057.30.[1] Under 26 U.S.C. § 6672, Dr. Bean will be liable for the entire amount of the withholding tax due to the Internal Revenue Service ("IRS") if, at the

---

[1]        As calculated through August 25, 2008.

time the tax was due, he was, with regards to General Express, a "responsible person" who "willfully" failed to turn over the withholding tax.

Dr. Bean is a medical doctor practicing in Beaumont, Texas. Doc. 16 Exh. 3 at 9, 17. In 1997, Dr. Bean's niece and her husband, Cindy and Bruce Booker, convinced him to invest $25,000 in a partnership, General Deliveries. Doc. 16 Exh. 5 at 33, 34 & 38; Doc. 16 Exh. 6 at 15. General Deliveries used students to drive small trucks and make deliveries for restaurants in the Woodlands area. Doc. 16 Exh. 5 at 33-34. The business failed, but Dr. Bean, and Cindy and Bruce Booker decided to continue operating the business in an expanded version, this time as a corporation named General Express. Doc. 16 Exh. 5 at 33-34; Doc. 16 Exh. 6 at 15, 20-22. The new company made not just restaurant deliveries but trucking, courier, and short-range load deliveries, known as "hotshots" or "hot loads." *Id*. Dr. Bean provided the funds to start-up this business. *Id*.

On July 7, 1998, Dr. Bean, as President of General Express, filed a certificate of amendment to General Express' articles of incorporation, listing himself as the company's sole director and shareholder. Doc. 16 Exh. 9 at 1-2. At the same time, General Express issued one thousand shares in total, all to Dr. Bean. Doc. 16 Exh. 10 at 1. Dr. Bean, however, denied any involvement with the corporation except as a benevolent family financier. Doc. 16 Exh. 3. For example, he stated "I didn't have anything to do with payroll." Doc. 16 Exh. 3 at 36. He conceded, however, that all payroll checks required his signature, via stamp. *Id*. At his deposition, Dr. Bean testified as follows regarding the control of payroll checks:

> Q:  Now, you had said that at least a majority, if not all, the payroll checks were signed via a stamp?
>
> A:  Uh-huh.
>
> Q:  Who had access to that stamp?

>A:  The office – that office with the people in there, and I think that the payroll person who was doing it was Tonja Brown.
>
>Q:  Now, how did it come about that they had a stamp for your name?
>
>A:  Because I wasn't going to be involved in anything.  So I had a stamp – **I have stamps in my office, and I told them you can take a stamp and, you know stamp my – just stamp my name on the checks.**  I knew I wasn't involved in anything.  I had a business.  I had a life.

Doc. 16 Exh. 3 at 46-47 (emphasis added).  This line of testimony continued as follows:

>Q:  Did it concern you that essentially they could stamp their name to any single check that the company had?
>
>A:  Truthfully, no, because I trust my family.

Doc. 16 Exh. 3 at 47.  This line of questioning went on:

>Q:  Did you ever get any notifications that they were stamping checks without enough money to cover them?
>
>A:  Yes.
>
>Q:  When did you get those?
>
>A:  Multiple times.  I can't say the first time, but multiple times.

Doc. 16 Exh. 3 at 47.  In her affidavit, Tonja Brown, Dr. Bean's niece, testified that she issued the payroll checks and signed or stamped these checks on his behalf.  Doc. 21 Exh. 3.

Dr. Bean showed knowledge of when and under which account General Express employees were paid.  Doc. 16 Exh. 3 at 36.  Dr. Bean received the bank statements from General Express' payroll and operating accounts at his medical office in Beaumont, Texas.  Doc. 16 Exh. 12 & Exh. 13.

On October 14, 1999, Dr. Bean sent a fax to Bruce Bean, Cindy and Bruce Booker and others operating General Express.  Doc. 16 Exh. 17 at 1.  In it, Dr. Bean states, "[i]t appears to me (opinion only) that we are not going in the right direction with this company." *Id*.

Furthermore, "[r]eports I received of the last meeting, which I did not attend, are that it was a fiasco." *Id*. Dr. Bean complained of the "unprofessionalism" and "lack of business acumen." *Id*. Specifically, Dr. Bean expressed concern that General Express was failing to meet its commitments in paying drivers, insurance premiums and installments on trucks. *Id*.

Dr. Bean had the authority to obtain loans on behalf of General Express. For example, he acted as the guarantor of a $ 250,000 loan from Community Bank and Trust to General Express, while also signing on behalf of General Express as its President. Doc. 16 Exh. 14 at 3-4. Additionally, Dr. Bean loaned General Express approximately $ 200,000 of his personal funds. Doc. 16 Exh. 3 at 50-51.

General Express was a loss-making enterprise. Doc. 16 Exh. 4 at 30. Dr. Bean was the sole reason for its continued existence, providing loans on a weekly, sometimes daily basis. *Id*. at 30, 34. Despite these loans, General Express' bank statements on its operating and payroll accounts showed insufficient funds charges and negative balances throughout 1999 and 2000. Doc. 16 Exh. 12 & 13.

Sometime between 1998 and 2001, Dr. Bean recalled being warned of tax problems at General Express by an "acquaintance" of Bruce Bean, his brother and an officer at General Express. Doc. 16 Exh. 3 at 69-70. At his deposition, Dr. Bean testified as follows:

> Q: Did it concern you that someone had called saying that there were tax problems at a company you were 100 percent shareholder of?
>
> A: It concerned me, but my brother – I just felt like my brother would take care of me.

Doc. 16 Exh. 3 at 70.

Because Dr. Bean ran his own private practice, he admitted being intimately familiar with the requirements of Form 941, which pertains to tax withholding from employee

salaries. Doc. 16 Exh. 3 at page 79. Dr. Bean filed the quarterly Form 941 for his office personnel at his private practice. *Id.* Dr. Bean, therefore, acknowledged being aware that General Express also needed to file Form 941. *Id.* at 80. According to Dr. Bean, his brother Bruce Bean was in charge of all "business" at General Express, including, presumably filing Form 941. *Id.*

General Express failed to file its payroll tax returns (Form 941) for the quarterly periods ending September 30, 1998, through December 31, 2001, or pay the amounts owed for those quarters. Doc. 16 Exh. 15. Pursuant to the authority of 26 U.S.C. § 6020(b), the IRS filed tax returns for General Express on November 30, 2003, and assessed the proper amounts due. (*See* General Express Form 941's for 9/30/1998 to 12/31/2001, Doc. 16 Exh. 15). The current amount due for the quarterly periods ending September 30, 1998, through December 31, 2001, calculated through August 25, 2008, is $ 1,022,057.30. Doc. 16 Exh. 16.

## II.        Summary Judgment Standard

A party moving for summary judgment must inform the court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The initial burden falls on the movant to identify areas essential to the nonmovant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). If the moving party fails to meet its initial burden, the motion must be

denied, regardless of the adequacy of any response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Moreover, if the party moving for summary judgment bears the burden of proof on an issue, either as a plaintiff or as a defendant asserting an affirmative defense, then that party must establish that no dispute of material fact exists regarding all of the essential elements of the claim or defense to warrant judgment in his favor. *Fontenot v. Upjohn*, 780 F.2d 1190, 1194 (5th Cir. 1986) (the movant with the burden of proof "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor") (emphasis in original). In a refund suit, the taxpayer has the burden of proving that the IRS's determination is incorrect. *Yoon v. Comm'r*, 135 F.3d 1007, 1012 (5th Cir. 1998).

Once the movant meets its burden, the nonmovant must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323-24. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citing *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). Instead, the non-moving party must produce evidence upon which a jury could reasonably base a verdict in its favor. *Anderson*, 477 U.S. at 248; *see also DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005). To do so, the nonmovant must "go beyond the pleadings and by [its] own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial." W*ebb v. Cardiothoracic Surgery Assoc. of North Texas, P.A.*, 139 F.3d 532, 536 (5th Cir.1998). Unsubstantiated and subjective beliefs and conclusory allegations and opinions of fact are not competent summary judgment evidence. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102

F.3d 137, 139-40 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992), *cert. denied*, 506 U.S. 825 (1992). Nor are pleadings summary judgment evidence. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1046 (5th Cir. 1996) (citing *Little*, 37 F.3d at 1075). The non-movant cannot discharge his burden by offering vague allegations and legal conclusions. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 889 (1990). Nor is the court required by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992)).

Nevertheless, all reasonable inferences must be drawn in favor of the non-moving party. *Matsushita*, 475 U.S. at 587-88; *see also Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). Furthermore, the party opposing a motion for summary judgment does not need to present additional evidence, but may identify genuine issues of fact extant in the summary judgment evidence produced by the moving party. *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 198-200 (5th Cir. 1988). The non-moving party may also identify evidentiary documents already in the record that establish specific facts showing the existence of a genuine issue. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990). In reviewing evidence favorable to the party opposing a motion for summary judgment, a court should be more lenient in allowing evidence that is admissible, though it may not be in admissible form. *See Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d 77, 80 (5th Cir. 1988).

**III.**        **Discussion**

Employers are required to withhold their employees' share of federal social security and income taxes from the employees' wages.  *See* 26 U.S.C. §§ 3102(a) and 3402(a).  The withheld money is held in trust by an employer for the benefit of the United States.  *See* 26 U.S.C. § 7501(a).  Employers are then required to pay over the withheld taxes to the United States.  *See Wood v. United States*, 808 F.2d 411, 414 (5th Cir. 1987).  Failure to withhold or pay over the required payroll taxes may result in the assessment of penalties under 26 U.S.C. § 6672.  Section 6672 provides, in relevant part, as follows:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the amount of the tax evaded, or not collected, or not accounted for and paid over . . .

26 U.S.C. § 6672(a).  In *Slodov v. United States*, 436 U.S. 238, 246 n. 7, (1978), the Court noted that cases decided under § 6672 generally refer to the "person required to collect, truthfully account for, and pay over any tax imposed by this title" by the phrase "responsible person."  Thus, a responsible person is any person who performs any one of the three functions specified in the statute.  *Id*. at 250.

The question before the Court, then, is whether Dr. Bean is a "responsible person" who "willfully" failed to pay over the withheld taxes.  *Turnbull v. United States*, 929 F.2d 173, 178 (5th Cir.1991); *see also Raba v. United States*, 977 F.2d 941, 943 (5th Cir. 1992); *Gustin v. United States*, 876 F.2d 485, 491 (5th Cir. 1989); *Wood v. United States*, 808 F.2d 411, 414 (5th Cir.1987); *Howard v. United States*, 711 F.2d 729, 733 (5th Cir. 1983). In § 6672(a) cases, once the Government offers an assessment into evidence, the burden of proof is on the taxpayer to disprove his responsible-person status or willfulness.  *See Morgan v. United States*, 937 F.2d

281, 285 (5th Cir. 1991); *Brounstein v. United States*, 979 F.2d 952, 954 (3d Cir. 1992); *Oliver v. United States*, 921 F.2d 916, 919 (9th Cir. 1990); *Ruth v. United States*, 823 F.2d 1091, 1093 (7th Cir. 1987).

The IRS contends that the undisputed evidence presented on summary judgment establishes that Dr. Bean is a "responsible person" who "willfully" failed to pay withholding taxes. In particular, the IRS asserts that: (i) Dr. Bean possessed sufficient indicia of authority to be a responsible person for purposes of § 6672 and (ii) his failure to pay the overdue taxes was willful because he acted with reckless disregard of a known or obvious risk that the trust funds may not be remitted to the Government. Thus, the IRS argues, it is entitled to judgment as a matter of law on the issue of Dr. Bean's liability under § 6672. After a careful review of the record, the Court agrees.

### 1. Was Dr. Bean a "Responsible Person"?

The Fifth Circuit "takes a broad view of who is a responsible person under § 6672." *Logal v. United States*, 195 F.3d 229, 232 (5th Cir. 1999) (citing *Barnett v. Internal Revenue Service*, 988 F.2d 1449, 1454 (5th Cir. 1993)). The crucial inquiry is whether the person had the "effective power" to pay the taxes--that is, whether he had the actual authority or ability, in view of his status within the corporation, to pay the taxes owed. *Barnett*, 988 F.2d at 1454.

In order to determine whether Dr. Bean had such authority, the Court asks whether he: (i) is an officer or member of the board of directors; (ii) owns a substantial amount of stock in the company; (iii) manages the day-to-day operations of the business; (iv) has the authority to hire or fire employees; (v) makes decisions as to the disbursement of funds and payment of creditors; and (vi) possesses the authority to sign company checks. *Barnett*, 988 F.2d

at 1455. No single factor is dispositive. *Id*. A review of the record reveals that Dr. Bean: (i) was the sole owner of General Express with 100 percent of the issued stock; (ii) did not manage the day-to-day operations of the business, as such, but as the sole director and president of General Express was in weekly, at times daily, contact with the management of General Express, ensuring the company's liquidity; (iii) because of his weekly/daily contact ensuring liquidity, as well as his ownership and control, can be said to have substantial involvement in disbursements and payments to creditors beyond that of merely an arm's length lender; (iv) as owner and ultimate controller of the business could, had he wished, hired or fired anyone; and, finally, (iv) all company checks were signed or stamped with Dr. Bean's signature so, undoubtedly, he had authority to issue those checks. Under these circumstances, where in a closely held business of which he was the sole shareholder, the president and the sole director, and the whole raison d'etre, Dr. Bean had the effective power to pay withholding taxes.

Dr. Bean attempts to characterize his role as that of a "dormant financer" [sic] to General Express. In his deposition, Dr. Bean testifies that he "wasn't involved in anything." Yet his communications with General Express' management paint a different picture. Dr. Bean berated them, stating "No one is above the company! That includes me!" Dr. Bean goes on to express concern about the particulars of the business, including ensuring that General Express was meeting its financial commitments. Dr. Bean's fax reveals someone actively involved in the management of the company.

Dr Bean argues that because the day-to-day operations of General Express were in the hands of other family members he should not be held liable for the § 6672 penalty. One, cannot, however, escape her status as a "responsible person" by delegating authority to others. *Barnett*, 988 F.2d at 1454; *Gustin*, 876 F.2d at 491. The statute expressly applies to "any"

responsible persons, not just to the person most responsible for the payment of the taxes. 26 U.S.C. § 6672(a). Thus, whether or not Dr. Bean delegated the jobs of withholding and paying employees' taxes and generally paying creditors to his brother Bruce Bean is irrelevant. *Barnett*, 988 F.2d at 1454.

Also irrelevant is whether Dr. Bean personally signed any payroll checks, or whether his niece Tonja Brown stamped or signed the checks with his signature. Responsibility in this context is a matter of status, duty and authority. *Howard*, 711 F.2d at 734. Dr. Bean had the authority to sign the payroll checks because they all required his signature. The inquiry ends there. *Cf. Gustin*, 876 F.2d at 492 (president of corporation held responsible person despite limited check writing authority); *Bowen*, 836 F.2d at 966, 968 (president and vice-president with signing authority over bank accounts held responsible persons); *Wood*, 808 F.2d at 415 (chairman of board with check signing authority held responsible person); *Howard*, 711 F.2d at 733-735 (minority shareholder acting as treasurer and executive and executive vice-president held responsible person); *Mazo*, 591 F.2d at 1156 (general manager with check signing authority held responsible person); *Hornsby v. I.R.S.*, 588 F.2d 952, 954 (5th Cir. 1979) (president of corporation with check signing authority held responsible person); *Young*, 609 F. Supp. at 518 (officer with check signing authority held responsible person).

Finally, the fact that General Express was run out of a separate office in Houston, Texas, which Dr. Bean never visited, does not change this conclusion. Although Dr. Bean remained in Beaumont, Texas, he was in constant contact, via phone, with the management of General Express, who came to him every week with some new need for financing. Merely locating the operational headquarters of a corporation in a separate locale from that of the owner, president, and director should not absolve him of his status as a "responsible person." *See*

*Barnett*, 988 F.2d at 1456 ("[T]o permit corporate officers who otherwise would have § 6672 responsibility to avoid that status simply because they operate out of an office of the company other than the one where tax and payroll matters are handled 'would open the door to a host of evasive tactics.'").

### 2. Did Dr. Bean "Willfully" Fail to Pay the Payroll Taxes?

As stated earlier, section 6672(a) only imposes liability on a responsible person if that person "willfully" failed to collect, account for, or pay over the withheld employment taxes. Under this statute, willfulness requires a voluntary, conscious, and intentional act, but not necessarily a bad motive or evil intent. *Gustin*, 876 F.2d at 492. The Government normally proves willfulness through evidence that the responsible person paid other creditors with knowledge that payroll taxes were due at the time to the United States. *Id.*; *see also Wood*, 808 F.2d at 415. Willfulness, however, also encompasses reckless disregard of a known *or obvious* risk that trust funds would not be paid over to the United States. *See*, e.g., *Mazo v. United States*, 591 F.2d 1151, 1154 (5th Cir. 1979).

Dr. Bean has demonstrated reckless disregard of an obvious risk. Dr. Bean single-handedly ensured the continued existence of General Express with weekly, even daily, cash injections. His family contacted him about specific obligations General Express had to meet to keep operating, and Dr. Bean provided the funds required. At the same time, Dr. Bean knew the company was failing to operate at the most basic levels. He included himself in the management of General Express, lecturing the officers of the company on the need to pay drivers, insurance premiums and installments on trucks. He knew that there were insufficient funds in the payroll and operating accounts, as the bank statements for those accounts were sent to his medical office in Beaumont, Texas. At his deposition, he testified that a woman connected to Bruce Bean, his

brother and an officer at General Express, informed him he would be subject to tax problems occurring at General Express. Because Dr. Bean filled out Form 941 for the employees working at this private practice in Beaumont, Texas he knew General Express bore the same responsibility.

Dr. Bean "permitted [the corporation] to continue in business and use trust funds collected on behalf of the United States to pay other creditors, effectively forcing the United States to become a joint venturer in his business." *Commonwealth Nat'l Bank v. United States*, 665 F.2d 743, 758 (5th Cir. 1982). In *Commonwealth Nat'l Bank* a taxpayer ceded control of his company to a lending bank. *Id*. The taxpayer still continued on in his business, while knowing the bank was paying off other creditors of his company before the government. *Id*. Like the taxpayer in *Commonwealth Nat'l Bank,* Dr. Bean showed reckless disregard by making it possible for General Express to operate at the brink of disaster, the only difference is that in *Commonwealth Nat'l Bank* the risk that withholding taxes would not be paid over was known, while here it is painfully obvious. Thus, Dr. Bean has acted "willfully" and the Court finds for the government.

### 3. Dr. Bean's Cross-Motion for Summary Judgment

In his untimely cross-motion for summary judgment,[2] Dr. Bean claims that the § 6672 penalty assessment is barred by the statute of limitations. The IRS had three years from the date the tax returns were filed to assess the § 6672 penalty. 26 U.S.C. 6501(a); *Stallard v. United States*, 12 F.3d 489, 493 (5th Cir.1994) ("The assessment itself must be made within three years of the filing of the return giving rise to the liability that is the subject of the assessment in question.") Dr. Bean argues that, even though General Express never filed returns

---

[2] According to the Court's Amended Scheduling Order (Doc. 15), the dispositive motions' deadline was August 15, 2008. Plaintiff did not file his cross-motion for summary judgment until September 10, 2008.

for the periods at issue, they would be deemed filed by April 15 of the succeeding year. This would place the latest filing as of April 15, 2002. There is, however, no support for this proposition.

Dr. Bean erroneously relies on 26 U.S.C. 6501(b)(2). That provision only states that, when a return *is filed* before April 15 of that calendar year, it will be considered filed as of April 15 of that calendar year. The applicable provision here is 26 U.S.C. § 6501(c)(3), which provides that: "[i]n the case of failure to file a return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time." General Express failed to file tax returns for the tax periods at issue, and, thus, the IRS has the power here to attempt to collect the tax "at any time." The Court, accordingly, denies Dr. Bean's cross-motion for summary judgment.

### IV. Conclusion

Dr. Bean is a responsible person who willfully failed to pay over the required payroll taxes. As such, he is liable for the section 6672 penalty assessed against him. Accordingly, it is hereby

ORDERED that the United States' motion for summary judgment (Doc. 16) is GRANTED; and it is further

ORDERED that Dr. Bean's motion for summary judgment (Doc. 22) is DENIED.

SIGNED at Houston, Texas, this 14th day of January, 2009.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE